Donald DALTON, Jeanetta Dalton and
Hazel Petrick, Appellants,

v.

FIRST NATIONAL BANK OF
GRAYSON, Appellee.

Court of Appeals of Kentucky.

June 13, 1986.

Gordon J. Dill, Jr., Ashland, for appellants.

Phillip D. McKenzie, Grayson, for appellee.

Before HAYES, C.J., and CLAYTON and HOWERTON, JJ.

HAYES, Chief Judge:

This is an appeal from a default judgment of the Carter Circuit Court which found for the appellee, plaintiff below, as a matter of law. We vacate the judgment of the circuit court.

The appellant, Don Dalton, was a depositor and customer of the appellee, First National Bank of Grayson (bank). On February 21, 1984, Don Dalton wrote a check on his account with the bank for $1,669.50, made payable to Roger Ingles, apparently as payment for goods received. Dalton immediately called the bank and placed an oral stop payment order on the check. The bank admits that this stop payment order was valid. On February 22, 1984, the bank erroneously honored the check upon presentment by Ingles, despite the valid stop payment order.

In an action filed May 14, 1984, the bank brought suit against Don Dalton and Roger Ingles in Carter District Court. In its complaint the bank alleged (1) that Dalton had received the goods; (2) that Ingles had received payment; (3) that the bank had paid the check over a valid stop payment order; and (4) that either Dalton or Ingles was liable to the bank for the amount of the check. No other allegation or basis for the cause of action was given in the complaint.

Subsequently, according to the bank, Don Dalton contacted the bank. In a telephone conversation Dalton told the bank he was living in Indiana, having moved from his former address in Grayson, Kentucky. Furthermore, Dalton admitted that he received the goods as ordered from Ingles. Dalton also promised to send the bank a promissory note for the amount of the check paid to Ingles.

Previously, in January 1983, Don Dalton and his wife, Jeanetta Dalton, had borrowed money from the bank to purchase a mobile home. The terms of the security agreement gave the bank a purchase money security interest in the trailer. On the back of the security agreement was a boilerplate future advance clause which purported to agree that the trailer would also secure any other debt owed by the Daltons then or thereafter to the bank.

In July 1984, Don Dalton's mother, Hazel Petrick, visited the bank in Grayson from her home in Salem, Indiana. Petrick allegedly purchased the Dalton's note on the trailer from the bank, giving as down payment Petrick's personal check, drawn on an Indiana bank, for $1,464.08. The bank delivered the Daltons' note to Petrick after typing on the note the assignment of all the bank's rights, title and interest in the instrument. Petrick then immediately stopped payment on her down payment check to the bank, and went to the Carter County Clerk's office where she attempted to have all liens removed from the trailer.

An amended complaint was filed in Carter District Court alleging the above facts and naming Hazel Petrick and Jeanetta Dalton as defendants, in addition to Don Dalton and Roger Ingles. The amended complaint incorporated the allegations in the first complaint, and in addition alleged fraud on the part of Don Dalton and Hazel Petrick. The bank asked for (1) judgment

against Don Dalton for $1,669.50; (2) punitive damages against all defendants jointly and severally; (3) cancellation of the assignment made to Hazel Petrick of the note on the trailer; and (4) that Jeanetta Dalton's interest in the trailer be determined. On the basis of the amended complaint the bank also made a motion to remove the action to Carter Circuit Court, which was granted.

Service of process and notice to all of the defendants except Roger Ingles (who presumably was still in business in Kentucky) was by warning order attorney. Copies of the complaint were sent by regular mail to Don Dalton and Hazel Petrick at Petrick's address in Indiana, and to Jeanetta Dalton at the Daltons' last known address in Grayson, Kentucky. Jeanetta Dalton's letter was returned undelivered. Letters to Don Dalton and Hazel Petrick were not returned, and were presumably received.

Only Roger Ingles filed an answer to the complaint. Ingles also filed a motion in Carter District Court to dismiss the action. This motion was apparently never ruled upon by either the Carter District Court or the Carter Circuit Court.

In October 1984, the bank moved for a default judgment. This motion was granted by the circuit court. In its Order and Judgment the court first stated that the defendants had been "duly and personally served" by "Warning Order Attorney," and that all of the allegations in the bank's complaint were deemed to be true. The court accordingly entered judgment granting all relief requested by the plaintiff bank. In addition, the court (1) awarded $1,464.08 in damages for the voided check given by Hazel Petrick in partial payment for assignment of the Daltons' note on the mobile home; (2) ordered the sale of the Daltons' mobile home pursuant to KRS 355.9–504, with the proceeds to be applied to the entire judgment; (3) reserved judgment as to any liability of Roger Ingles for the costs of the proceedings; and (4) awarded $1,000.00 in attorney's fees. Don Dalton, Jeanetta Dalton and Hazel Petrick thereupon brought this appeal.

On appeal the appellants contend that the trial court erroneously entered default judgment, arguing (1) that the trial court lacked jurisdiction over the parties; and (2) that the complaint failed to state a cause of action upon which relief could be granted. We agree with both contentions, either of which would be sufficient to mandate reversal. As the two arguments are inextricably interrelated under the facts presented in this case, however, we will discuss each argument in some detail.

 We begin with an examination of the complaint. A default judgment may not be based upon a complaint which fails to state a cause of action. *Crowder v. American Mutual Liability Insurance Co.*, Ky., 379 S.W.2d 236, 238 (1964); *Stegemiller v. Crowe*, 297 Ky. 52, 178 S.W.2d 937, 938 (1944). The bank's complaint alleged merely that its cause of action against Don Dalton and Roger Ingles was based upon the fact that (1) the bank paid a check to the proper payee (Roger Ingles), over a valid stop payment order; and (2) that the payor (Don Dalton) received value for the check. In our opinion, with nothing more, this was insufficient to establish liability for the amount of the check to the bank by either Don Dalton or Roger Ingles.

 Although the modern rule is to require only the most general and conclusory pleadings in order to sustain a cause of action, some minimum standard in the art of pleading must be met. *Morgan v. O'Neil*, Ky., 652 S.W.2d 83, 85 (1983). Where a remedy and cause of action are provided by statute, some reference to the statute may be required. *Id.*

The bank's cause of action in this case was apparently based upon the Uniform Commercial Code (U.C.C.), KRS 355.1–101 *et seq.*, and is therefore statutory in nature. A customer may order a bank to stop payment of any item payable on his account, provided that the order is received in time to afford the bank a reasonable opportunity to act upon the order. KRS 355.4–403(1). An oral order is sufficient. KRS 355.4–403(2). The bank in this case admits

that Don Dalton's stop payment order was proper.

■ Where a bank has erroneously paid an item over a valid stop payment order it is, to the extent necessary to prevent unjust enrichment, subrogated to the rights of (1) any holder in due course of the item against the drawer or maker; (2) the payee or any other holder of the item against the drawer with respect to the transaction out of which the item arose; or (3) the drawer against the payee or any other holder of the item with respect to the transaction out of which the item arose. KRS 355.4-407(1).

In the case before us, Don Dalton (the drawer) received goods from Roger Ingles (the payee). If the goods were nonconforming or otherwise faulty, such that Don Dalton could rightfully demand a refund from Ingles, then the bank could assert Dalton's rights against Ingles for the amount of the check. Conversely, if Ingles delivered goods to Dalton and was not paid, the bank could assert Ingles' right to payment against Dalton and collect the amount of the check from Dalton.

In order to state a cause of action under these circumstances a plaintiff bank must (1) acknowledge credit to the depositor's account or otherwise show a loss incurred in paying the item; (2) identify the party who is thereby unjustly enriched and affirmatively assert the bank's subrogation rights; and (3) identify the status of the parties in whose place it claims and the rights or defenses to which it is therefore subrogated. *See Siegel v. New England Merchants National Bank*, 386 Mass. 672, 437 N.E.2d 218, 223 (1982).

In this case, for example, it is possible that Don Dalton had insufficient funds in his account to cover the amount of the check paid to Roger Ingles. A bank may charge any properly payable item to a customer's account, even where the charge creates an overdraft. KRS 355.4-401(1). Payment of such an overdraft by the bank is in the nature of a loan to the customer, premised upon the condition of repayment. *Chute v. Bank One of Akron*, 10 Ohio App.3rd 122, 460 N.E.2d 720, 722 (1983). This "loan" to Don Dalton would create a situation where Dalton would have received his goods without paying for them, thereby becoming unjustly enriched. In order to prevent unjust enrichment on the part of Dalton, therefore, the bank could assert Ingles' hypothetical right to payment against Dalton, even though Ingles suffered no actual loss, and even though the "loan" was expressly against Dalton's stop payment order. *See Sunshine v. Bankers Trust Co.*, 34 N.Y.2d 404, 358 N.Y.S.2d 113, 314 N.E.2d 860 (1974). *See generally* J. White and R. Summers, *Handbook of the Law Under the Uniform Commercial Code* § 17-6 at 691 (2d Ed. 1980).

In its complaint, however, the bank neither alluded to the appropriate sections of the U.C.C. nor alleged any factual basis for its cause of action under the statute. The complaint fails to identify any unjustly enriched party, to assert any subrogation of rights or to identify the rights asserted to which the bank could be subrogated. We hold, therefore, that the bank's complaint against Don Dalton and Roger Ingles with regard to the $1,669.50 check in question completely fails to state a cause of action and the trial court abused its discretion in entering a default judgment on that issue. Furthermore, while it may be true that a cause of action for fraud on the part of Hazel Petrick and Don Dalton was sufficiently alleged in the complaint as amended, the circuit court never properly acquired jurisdiction to adjudicate that issue.

Personal jurisdiction over nonresidents may be acquired by appropriate action pursuant to KRS 465.210, the Kentucky "long-arm" statute. Although the appellants in this case were clearly subject to service of process under that statute, it is undisputed that service here with regard to Don Dalton, Jeanetta Dalton and Hazel Petrick was via warning order attorney only. Accordingly, the Daltons and Petrick were merely constructively served. CR 4.05 and CR 4.07.

■ Constructive service via warning order attorney will not subject nonresidents to personal judgment. KRS 454.165. Constructive service is sufficient merely to confer jurisdiction *quasi in rem*. *Fields v. Evans*, Ky.App., 675 S.W.2d 3, 5 (1983). *Quasi in rem* actions arise where an interest in property is the subject matter of the cause of action. *Id.*

■ Jurisdiction below was therefore limited to a determination by the court of the interests of the parties in property located in Kentucky and then only insofar as those interests related to the bank's cause of action outlined in its complaint. The only property alleged to be located in Kentucky in this case was the mobile home in which the bank retained a purchase money security interest. On the face of the complaint, therefore, the circuit court had no jurisdiction over the dispute between Hazel Petrick and the bank over Petrick's alleged fraud or any alleged conspiracy to defraud the bank by Petrick and her son, Don Dalton. While Dalton's note arguably concerns the trailer, it is ownership of the *note* that is the subject matter of the fraud, not ownership of the trailer itself.

Moreover, the circuit court's jurisdiction over the $1,669.50 which the bank claims is owed by Don Dalton is dependent upon whether that dispute is sufficiently related to the mobile home. The bank alleged in its complaint that the amount of the check was secured by the trailer, by virtue of a future advance clause in the security agreement signed by Don and Jeanetta Dalton when they borrowed the purchase price of the trailer.

As previously discussed, the complaint fails to make any connection between the amount claimed and the trailer, e.g., that the $1,669.50 was "loaned" to the Daltons upon the bank's payment of an overdraft on the Daltons' account. Assuming, however, for the sake of argument, that such a "loan" had been sufficiently alleged in the complaint, we do not believe that the future advance clause in the security agreement signed by the Daltons acts to secure the amount of any overdraft on Don Dalton's account with the bank.

Obligations covered by a security agreement may include future advances or other value and no new agreement will be necessary to secure the new advance. KRS 355.-9–204(5). Such future advance clauses are usually found in commercial "floating lien" contracts, where the intent of the parties to include future advances may be inferred from the similarity of the future transaction with the underlying transaction or from the course of dealing between the parties. A future advance clause will normally be enforced only to the extent that future transactions or liabilities sought to be secured were in the clear contemplation of the parties. *See John Miller Supply Co., Inc. v. Western State Bank*, 55 Wis.2d 385, 199 N.W.2d 161 (1972); 79 C.J.S.Supp. *Secured Transactions* § 18 (1974).

Some jurisdictions require, therefore, that an intention to include future advances which are not of the same type or "class" as the primary debt secured must be clearly set forth in the agreement. *See, e.g., John Miller Supply Co., Inc., supra,* at 164–165 (future advance clause will not apply to claims which are unrelated to the course of financing contemplated by the parties); *Maloy v. Citizens and Southern National Bank*, 139 Ga.App. 798, 229 S.E.2d 678, 679–680 (1976) (purchase money security interest in a motor vehicle extends to later purchase money loans for consumer goods); *Commerce Union Bank v. Possum Holler, Inc.*, 620 S.W.2d 487, 491 (Tenn.1981) (future advance clause is enforceable where past and future advances are used for commercial purposes as would naturally be contemplated by the parties).

■ Although the "same class" rule has apparently not been previously applied to future advances in Kentucky there is authority for doing so. The traditional rule in Kentucky with regard to pledged collateral was that, in the absence of specific agreement, collateral pledged to secure a specified loan or debt could not be appropriated to a different debt or class of debts. *National Bank of Kentucky v. Gallagher,*

243 Ky. 740, 49 S.W.2d 1006, 1008 (1932). This is in keeping with the requirement that a contract must conform to the intention of the parties. *State Farm Mutual Automobile Insurance Co. v. Hobbs,* Ky., 268 S.W.2d 420, 422 (1954). We hold, therefore, that broad, boilerplate future advance clauses in adhesion contracts are not enforceable as to future transactions which are of a different type or class than the original secured transaction. Specifically, such clauses in purchase money security agreements for consumer goods will be enforceable only where the latter transaction concerns a similar purchase money loan for consumer goods.

Turning to the case before us, we find that the Daltons could not have contemplated that by signing a security agreement to purchase a trailer they were securing an involuntary "loan" created by an overdraft, where the overdraft was the result of an error by the bank. Therefore, even assuming that the bank had properly alleged the existence of such a "loan", the loan would not be secured by the Daltons' trailer, since the second loan would be a different type or class than the purchase money loan for the trailer. Accordingly, the trailer was effectively unrelated to the cause of action outlined in the bank's complaint and *quasi in rem* jurisdiction was never properly acquired by the circuit court.

Furthermore, we find that the circuit court lacked jurisdiction over the subject matter since the amount in dispute never exceeded the $2,500.00 jurisdictional amount. KRS 24A.120(1); 23A.010(1). Although the amounts in controversy ($1,669.50 and $1,464.08) totalled in excess of the statutory amount, a single plaintiff may not aggregate multiple claims against multiple parties in order to satisfy the jurisdictional amount necessary to invoke subject matter jurisdiction. *See Clark v. Cincinnati, N.O. and T.P. Railway Co.,* 258 Ky. 197, 79 S.W.2d 704, 406 (1935). *See generally,* C. Wright and A. Miller, *Federal Practice and Procedure*: Civil Section 1588 at 805 (1971). The action was therefore erroneously transferred from Carter District Court to Carter Circuit Court.

For the reasons stated previously we hold that, with the exception of the allegations of fraud on the part of Hazel Petrick and Don Dalton, the appellee's complaint below failed to sufficiently state a cause of action. Furthermore, had the complaint been sufficient the circuit court would still have lacked jurisdiction over the parties or the subject matter, including both the alleged fraud and the improperly paid check. Accordingly, the judgment and order of the Carter Circuit Court is hereby vacated.

All concur.