**In re James W. POLLEY d/b/a Polman Quality Office Products Natalie L. Polley, Debtor.**

Bankruptcy No. 97–40194(3)7.

United States Bankruptcy Court, W.D. Kentucky.

Feb. 17, 1998.

As Amended March 2, 1998.

Joseph W. Castlen, III, Owensboro, KY, for Debtors.

Harry Mathison, Henderson, KY, trustee.

### MEMORANDUM

DAVID T. STOSBERG, Bankruptcy Judge.

This matter is before the Court on the Trustee's objection to certain claims of First Kentucky Bank ("FKB"). Trustee sold the debtors' principal residence for $75,000 and paid in full the first mortgage lien of FKB on the property. Trustee is currently holding the remaining funds from the sale in the sum of $9,801.37. FKB asserts various secured claims, totaling $20,796.52, against this balance based on a future advance clause in the original mortgage executed with the purchase of the debtors' residence on May 20, 1995.

The parties briefed this matter based on stipulations that limited the issue before the Court. Specifically, FKB acknowledged that it failed to afford the debtors notice of rescission, as required by 15 U.S.C. § 1635, with regard to the personal, consumer-type loans which comprise $13,004 of the $20,796.52 in disputed secured claims. (See Trial Brief of FKB at page 9). Consequently, FKB has narrowed its remaining secured claims to business loans which total $7,791.00.

■ The precise issue for the Court is whether the future advance clause (commonly referred to as a "dragnet clause"), which appears in the original mortgage securing the residence, operates to secure the subsequent business loans totaling $7,791.00.

The future advance clause in the mortgage reads as follows:

This mortgage shall secure payment of all renewals and extensions of the indebtedness mentioned herein. This mortgage shall also secure any additional indebtedness made to the Bank by the mortgagors or any of them or whether directly, indirectly, existing, future, contingent and whether made as surety, guarantor or otherwise and regardless of whether the same makes reference to this mortgage or is of the same type of class as the primary debt, not to exceed, however the maximum additional indebtedness of $60,000 over and above the original indebtedness stated above. Any additional amounts due from a person who is a mortgagor shall find (sic) all other persons who are mortgagors just as if made to each and all of them, and all persons who are a(sic) mortgagor shall be jointly and severally liable to repay any such obligation and the same shall be fully secured by this mortgage.

*See* Exhibit 2 (Mortgage at page 2–3).

According to FKB's Brief, claim numbers 3,4,5,6,7 and 9 represent business loans made after May 20, 1995, the date of the original mortgage containing the dragnet clause. (See page 3 of FKB's Brief). The notes which comprise the business loans were signed by Mr. Polley only, but they do not describe the residence as collateral.

Claim # 3 is supported by a UCC–1 covering the following types of property: "All inventory, equipment, fixtures, accounts receivable and general intangibles of James W. Polley DBA Polman Quality Office Products whether now owned or hereafter acquired and wherever located." There is a box entitled "Description of Real Estate" which is left blank.

Claim # 4 is supported by a UCC–1 covering the following property: "Mita Copier Model # 2085." Again, the "Description of Real Estate" box is blank.

Claim # 5 contains a Promissory Note with collateral described as: "This note is secured by a UCC–1 ... Dated October 4, 1996 [the one referenced with Claim # 3] on all inventory, equipment, fixtures, accounts receivable and general intangibles of James W. Polley DBA Polman Quality Office Prod-

ucts whether now owned or hereafter acquired and wherever located."

Claim # 6 is accompanied by a note which describes the collateral with identical language as the Claim # 5 note.

Claim # 7 is supported by a Promissory Note with the following language in the Collateral section:

> To the extent collateral previously has been given to lender by any person which may secure this loan, whether directly or indirectly, it is specifically agreed that all such collateral consisting of household goods will not secure this loan. In addition, if any collateral requires the giving of a right of rescission under Truth In Lending for this loan, such collateral also will not secure this loan unless and until all required notices of that right have been given.

Finally, claim # 9 is accompanied by a Promissory Note which contains no language referencing any collateral securing the loan.

Although the above-referenced financing statements do not describe the residence as collateral, the artfully drafted dragnet clause in the original residential mortgage specifies,

> [t]his mortgage shall also secure any additional indebtedness made to the Bank by the mortgagors or any of them or whether directly, indirectly, existing, future, contingent and whether made as surety, guarantor or otherwise and regardless of whether the same makes reference to this mortgage or is of the same type of class as the primary debt, ...

*See* Exhibit 2 (Mortgage at page 2–3). The future advance clause in the original mortgage specifies that it encompasses loans made to any one of the Polleys, and loans of a different character from the original mortgage (which would include business loans), even if there is no reference to the mortgage as collateral in subsequent loan agreements.

██ Kentucky law recognizes the enforceability of future advance clauses where the "nature and amount of the encumbrance is so described that it may be ascertained by the exercise of ordinary discretion and diligence, ..." *Bank of Maysville v. Brock,* 375 S.W.2d

814, 816 (Ky.1964). *See also, In re Blieden,* 49 B.R. 386, 390 (Bankr.W.D.Ky.1985).

Most importantly, actual notice to any subsequent creditor is provided by the future advance clause appearing in the original residential mortgage. *See, e.g., First Nat. Bank of Grayson v. Citizens Deposit Bank and Trust,* 735 S.W.2d 328, 331 (Ky.Ct.App.1987); *ITT Industrial Credit Co. v. Union Bank and Trust Co.,* 615 S.W.2d 2, 4 (Ky.Ct.App. 1981).

We hold that the future advance clause in the real estate mortgage dated May 20, 1995 operated to secure FKB's subsequent loans to Mr. Polley in connection with his business. We have entered an Order allowing FKB a secured claim in the amount of the $9,801.37.