In re Kevin O'Neal SWEENEY, Debtor.

Call Federal Credit Union, Plaintiff,

v.

Kevin O'Neal Sweeney, Defendant.

Bankruptcy No. 00–33531(2)7.
Adversary No. 00–3136.

United States Bankruptcy Court,
W.D. Kentucky.

June 11, 2001.

Susan Anderson Crull, Louisville, KY, for Debtor.

John Wilson, Louisville, KY, trustee.

### MEMORANDUM–OPINION

J. WENDELL ROBERTS, Bankruptcy Judge.

This matter is before the Court for a determination on the merits of Plaintiff's complaint objecting to discharge pursuant to 11 U.S.C. § 523(a)(6). Plaintiff, a formerly secured Creditor, alleges that Defendant willfully and maliciously injured it by converting the insurance proceeds he received to his own use after the collateral was destroyed in an accident. The trial of this matter was remanded after the parties agreed to stipulate the facts and submit the case for a decision. For the reasons stated below, this Court finds that $2,684.55, the balance due on the motorcycle loan at time of filing, is a non-dischargeable debt pursuant to 11 U.S.C. § 523(a)(6). Further, this Court shall enter a Judgment against Defendant for this amount plus interest at the federal judgment rate.

### FACTS

On or about April 22, 1998, Defendant purchased a 1990 Honda CBR 1000 motorcycle. This purchase was financed through a closed-end simple interest note ("Motorcycle Loan") with Philip Morris Employees Federal Credit Union, now known as Call Federal Credit Union (Plaintiff). Under the note, Defendant gave Plaintiff a security interest in the motorcycle and in any substitutions, replacements to parts and any proceeds. Defendant also agreed to keep the vehicle fully insured, and to make any insurance payments payable to Plaintiff in an amount equal to the lesser of the value of the collateral or the unpaid balance of the loan. The balance due on this loan, at the time of the bankruptcy filing, was $2,684.55.

On December 8, 1998, Defendant obtained another loan ("Second Loan") from Plaintiff. The amount due on this loan, at the time of the bankruptcy filing, was $5,520.81. The security agreement for the motorcycle loan provided that the security (the motorcycle) would also secure all other present and future debts.

On July 5, 1999, the motorcycle was destroyed in an accident. Defendant filed a claim with his insurance company, which issued a two-party check for $3,235.35 on July 22, 1999. The check was made out jointly to Kevin O. Sweeney and to the Philip Morris Credit Union. The check appears to have been endorsed by both Plaintiff (by a stamp) and by Defendant. It is unclear from the record who received the check first, but apparently Defendant was able to cash the check. Defendant used the insurance money to purchase a new motorcycle, rather than turning the proceeds over to Plaintiff.

The parties stipulated that the motorcycle had a reasonable fair market value of $4,235.00 at the time of the accident.

### LEGAL DISCUSSION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a) and 157(b). This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). The Plaintiff has the bur-

den of proving by a preponderance of the evidence that the debt at issue should not be discharged. Grogan v. Garner, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Whether the underlying claim amounts to conversion is determined under state law, but whether the debt is excepted from discharge is a matter of federal bankruptcy law. Grogan, 498 U.S. at 284, 111 S.Ct. 654, citing Brown v. Felsen, 442 U.S. 127, 129–30, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979).

In Kentucky, the tort of conversion is defined as the wrongful exercise of dominion and control over the property of another. Peoples Nat'l Bank v. Guier, 284 Ky. 702, 145 S.W.2d 1042 (1940); Illinois Cent. R. Co. v. Fontaine, 217 Ky. 211, 289 S.W. 263 (1926). Motive, intent and good faith are immaterial. Urban v. Lansing's Adm'r, 239 Ky. 218, 39 S.W.2d 219 (1931). The measure of damages is the value of the property at the time of conversion. Nolin Prod. Credit Ass'n v. Canmer Deposit Bank, 726 S.W.2d 693, 704 (Ky.App. 1986). See also State Auto. Mut. Ins. Co. v. Chrysler Credit Corp., 792 S.W.2d 626 (Ky.App.1990). Defendant's act of assuming control over the insurance proceeds, which clearly belonged to Plaintiff under the security agreement, amounted to conversion of Plaintiff's property under state law.

This Court must now determine whether the damages resulting from this conversion should be discharged in bankruptcy. 11 U.S.C. § 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the Debtor to another entity or to the property of another entity."

The United States Supreme Court recently articulated the standard for determining such an injury in Kawaauhau v. Geiger, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). The Court held that to except a debt from discharge under § 523(a)(6), the Debtor must have engaged in a "deliberate and intentional injury." Id. at 61, 118 S.Ct. 974. "Only acts done with the intent to cause injury—and not merely acts done intentionally—can cause willful and malicious injury." Markowitz v. Campbell (In re Markowitz), 190 F.3d at 455, 463 (6th Cir.1999); Geiger, 523 U.S. at 61, 118 S.Ct. 974; Abbo v. Rossi, McCreery & Assocs., Inc. (In re Abbo), 168 F.3d 930 (6th Cir.1999); Salem Bend Condo. Ass'n v. Bullock–Williams (In re Bullock–Williams), 220 B.R. 345 (6th Cir. BAP 1998). The Debtor must have intended the consequences of the act, not merely the act itself. Geiger, 523 U.S. at 61, 118 S.Ct. 974.

Since Geiger, courts have split over whether willful and malicious injury is established solely by proving intentional injury, or whether "willful" requires a finding of intentional injury and "malicious" requires that the act be without just cause or excuse. See Mitsubishi Motors Credit of America, Inc. v. Longley (In re Longley), 235 B.R. 651, 656 n. 5 (10th Cir. BAP 1999) and cases cited therein. A number of courts have adopted an integrated test, holding that an injury is willful and malicious if the Debtor intended to cause harm or if there is an objective substantial certainty that his or her actions will lead to injury. Miller v. J.D. Abrams, Inc. (In re Miller), 156 F.3d 598, 606 (5th Cir.1998); Harry Ritchie's Jewelers, Inc. v. Chlebowski (In re Chlebowski), 246 B.R. 639, 645 (Bankr.D.Or.2000). Other courts have adopted the Miller or Markowitz test to prove "willful," but require a separate test for the "malicious" prong. See Petralia v. Jercich (In re Jercich), 238 F.3d 1202, 1208–09 (9th Cir.2001) (adopts Markowitz test for "willful" prong, but also requires that the injury be wrongful, intentional and without just cause or excuse to satisfy "malicious" prong).

■ The Sixth Circuit has adopted an integrated test, but a more subjective one than the Fifth Circuit did in *Miller*. *Markowitz*, 190 F.3d at 464. In this Circuit, under *Markowitz*, the Creditor must demonstrate that the Debtor either (1) intended to cause injury to the Creditor or to the Creditor's property, or (2) engaged in an intentional act from which the Debtor believed injury would be substantially certain to result. 190 F.3d at 464. The Sixth Circuit recently reasserted the *Markowitz* test in affirming a decision by this Court excepting a debt from discharge under § 523(a)(6). *Kennedy v. Mustaine (In re Kennedy)*, 249 F.3d 576 (6th Cir.2001). *See also Avco Fin. Serv. v. Kidd (In re Kidd)*, 219 B.R. 278, 285 (Bankr.D.Mont. 1998) (adopting same subjective test as *Markowitz* ).

In support of its position, Plaintiff has cited a number of pre-*Geiger* § 523(a)(6) cases in which the Debtor had disposed of or converted a Creditor's collateral. *See Vulcan Coals, Inc. v. Howard*, 946 F.2d 1226 (6th Cir.1991); *Thorp Fin. Serv. v. Thomas (In re Thomas)*, 36 B.R. 851 (Bankr.W.D.Ky.1984); *Sunamerica Fin. Corp. v. Stephens (In re Stephens)*, 26 B.R. 389 (Bankr.W.D.Ky.1983). Plaintiff asserts that *Geiger* and *Markowitz* may not apply, as the facts in those cases are different from the present case.

■ This position is incorrect. *Geiger* and *Markowitz* apply to all cases under § 523(a)(6) in the Sixth Circuit. Although *Geiger* addressed § 523(a)(6) in the context of a medical malpractice case, and held only that debts arising from recklessly and negligently inflicted injuries are not willful and malicious, the Supreme Court cited with approval two of its previous decisions that did address the conversion of a Creditor's property. 523 U.S. at 63–64, 118 S.Ct. 974, *citing McIntyre v. Kavanaugh*, 242 U.S. 138, 37 S.Ct. 38, 61 L.Ed.

205 (1916) and *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934). The Court made clear in referencing these cases that to find a conversion non-dischargeable, there must be an intentional injury. Further, citing *Davis*, the Court stated that "not every tort judgment for conversion is exempt from discharge. Negligent or reckless acts ... do not suffice to establish that a resulting injury is 'willful and malicious'." 523 U.S. at 63–64, 118 S.Ct. 974.

In addition, many courts have determined, post *Geiger*, that the conversion of a secured Creditor's collateral is willful and malicious when the facts establish that the Debtor had the requisite intent (whether objective or subjective) to injure the Creditor. *See, e.g., Chlebowski*, 246 B.R. at 639 (Debtor pawned secured diamond ring with no reasonable prospect of redeeming it); *Fidelity Fin. Serv. v. Cox (In re Cox)*, 243 B.R. 713 (Bankr.N.D.Ill. 2000) (Debtor sold parts from secured car and sold it without Creditor's permission); *First Am. Title Ins Co. v. Lett (In re Lett)*, 238 B.R. 167 (Bankr.W.D.Mo.1999), *aff'd*, 242 F.3d 375, 1 Fed.Appx. 599 (8th Cir. 2001) (Debtor sold secured mobile home without Creditor's consent); *First Liberty Bank v. LaGrone (In re LaGrone)*, 230 B.R. 900 (Bankr.S.D.Ga.1999) (Debtor sold secured boat and engine to third party and failed to remit sale proceeds to Creditor); *Am. First Credit Union v. Gagle (In re Gagle)*, 230 B.R. 174 (Bankr.D.Utah 1999) (Debtor sold off parts of truck nothing remained of collateral).

Following *Geiger* and *Markowitz*, courts in this Circuit have likewise found debts non-dischargeable where the Debtor has converted a secured Creditor's collateral with either an intent to cause injury or where the Debtor believed there was a substantial certainty of injury. *See, e.g., Harr v. Harr (In re Harr)*, 2000 WL

620799 (Bankr.S.D.Ohio 2000) (son's conversion of mother's assets was substantially certain to injure mother and her estate and therefore non-dischargeable); *J. Bowers Constr. Co. v. Williams (In re Williams)*, 233 B.R. 398 (Bankr.N.D.Ohio 1999) (Debtor-homeowner intended to cause injury to home repair contractor by withdrawing funds from joint account earmarked for repairs and debt therefore non-dischargeable).

This Court previously had occasion to review the *Geiger* and *Markowitz* standards in a conversion case in *Mayfield Grain Co., Inc. v. Crump (In re Crump)*, 247 B.R. 1 (Bankr.W.D.Ky.2000). In that case, the Debtor/farmer failed to pay the Creditor bank the secured proceeds from the sale of his crop. We discharged the debt, finding that the Debtor did not intend to harm the Creditor, but was trying to keep his farming operation afloat by paying other immediate expenses. *Id.* at 7. The evidence demonstrated that the Debtor did not believe there was a substantial certainty of harm to the Creditor, as he fully expected to repay the debt.

■■■■ Since a Debtor in a § 523(a)(6) case is unlikely to admit that he or she intended to cause injury, or that he or she was substantially certain that injury would result, this state of mind can be established through circumstantial evidence. *Harr*, 2000 WL 620799 at 6. Willful injury may be proven indirectly by showing that the Debtor knew of the Creditor's lien rights and that the Debtor knew the conduct would cause injury to those rights. *Longley*, 235 B.R. at 657.

■■■■ In this case, it is not sufficient, as Plaintiff argues, to show that Defendant acted intentionally and wrongfully. The Court must consider whether the Defendant acted with specific intent to harm the Plaintiff. The facts as stipulated do not clearly demonstrate such an intent, but the Court infers this intent from the circumstantial evidence. In addition, the Court finds the facts establish that the Defendant, in converting the insurance proceeds for his own use, surely believed and understood that this act was substantially certain to harm the Plaintiff.

The security agreement between the parties grants the Plaintiff a security interest in the vehicle, and states that the collateral includes any substitutions, replacements, parts or proceeds. Further, the agreement specifies that any insurance payments are to be payable to Plaintiff for the lesser of the value of the collateral or the unpaid balance of the loan. Defendant is presumed to know the contents of the contract he signed with Plaintiff and is bound by its terms, unless he was not given an opportunity to read it, was misled as to its terms, or his signature was obtained by fraud. *Sears, Roebuck & Co. v. Lea*, 198 F.2d 1012 (6th Cir.1952); *Stout v. J.D. Byrider*, 228 F.3d 709, 715 (6th Cir. 2000), *cert. denied*, —— U.S. ——, 121 S.Ct. 1088, 148 L.Ed.2d 963 (2001). Defendant has not asserted any of these extraordinary circumstances, so the Court can presume that he knew his obligations under the contract.

Defendant intentionally violated the terms of this contract when he chose to cash the two party check he received from his insurance company. In fact, if he had "forgotten" his obligation to turn over the insurance proceeds to Plaintiff, the check made out jointly to Plaintiff should have jogged his memory. He chose to take the insurance proceeds for his own use, and obviously knew that Plaintiff was entitled to these funds and that his actions would injure Plaintiff. There is nothing in the stipulated facts indicating that Defendant had any intent other than to injure Plaintiff. The Court can certainly infer under these facts that Defendant intended to

cause the Plaintiff injury and believed there was a substantial certainty that Plaintiff would be financially harmed by his failure to turn over the insurance check. Therefore, the Court concludes that Defendant caused a willful and malicious injury to Plaintiff or to the property of Plaintiff.

Plaintiff urges this Court to enter a Judgment on its behalf in the amount of $4,235, the stipulated reasonable fair market value of the motorcycle at the time of the accident. This figure is the average retail value cited for a 1990 Honda CBR1000F motorcycle, according to the NADA Guide submitted as part of the stipulations.

■ Since the underlying basis of Defendant's willful and malicious injury claim is conversion, the Court will apply the usual measure of damages awarded for conversion. Generally, the measure of damages for conversion is the value of the converted property at the time of conversion, not the balance owing under the contract. *Gagle*, 230 B.R. at 184. Most courts define this value as full retail or fair market value.[1] *Chlebowski*, 246 B.R. at 645; *Cox*, 243 B.R. at 720; *First of Am. Bank v. Afonica (In re Afonica)*, 174 B.R. 242, 247 (Bankr.N.D.Ohio 1994).

■ However, where the balance due on the debt is less than the fair market value of the converted property, the Creditor can only recover the balance due on the account. This is because the Creditor only has an interest in the property (and can therefore only be injured) to the extent of the debt that is secured by the collateral. *Gagle*, 230 B.R. at 184; *Chlebowski*, 246 B.R. at 645; *Afonica*, 174 B.R. at 247.

■ In this case, the parties have stipulated that the fair market value of the motorcycle, at the time of the accident, was $4,235.[2] The balance due on the motorcycle loan, at the time of the bankruptcy filing, was $2,684.55. Since this amount is less than the value of the motorcycle, Plaintiff is only entitled to recover $2,684.55 in damages.

The Plaintiff asserts, however, that because of cross-collateralization clauses in both contracts, the balance Defendant owes is actually $8,205.36. If these clauses are valid, then Plaintiff is entitled to the reasonable fair market value of the vehicle, or $4,235, as this amount would then be less than the total balance due.

Both notes state that Defendant gave a security interest in any shares or deposits at the credit union. Both notes further state that "collateral securing other loans with you may also secure this loan," except loans secured by real estate. The security agreement, signed and filed at the time of the first loan, states that the "security agreement secures all other present and future debts" owed to Plaintiff, except for debts secured solely by a mortgage on residential real estate.

1. Plaintiff's reliance on *Associates Commercial Corp. v. Rash*, 520 U.S. 953, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997) to establish the appropriate measure of damages in this case is misplaced. The Court in *Rash* was addressing valuation of collateral in a Chapter 13 cram-down and based its decision on its interpretation of "proposed ... use of ... property" under 11 U.S.C. § 506(a). Even though *Rash's* replacement value may be the same as fair market value, it is more appropriate to look to conversion cases, which

award damages based on the injury the creditor actually suffered.

2. At the time of the conversion, which is the relevant time to determine the value of the collateral, the motorcycle was arguably only worth $3,235.35, as this is the amount the insurance company paid. In this case, the difference is irrelevant, as the balance due on the account is less than both values.

Future advance clauses are generally enforceable in Kentucky. K.R.S. 355.9–204(3). Whether a particular future advance clause is valid depends on whether it was clearly within the contemplation of the parties. *ITT Indus. Credit Co. v. Union Bank & Trust Co.,* 615 S.W.2d 2, 4–5 (Ky.Ct.App.1981). The future advance clause must be clearly stated in the security agreement, but need not appear on the financing statement. *Id.* at 5; *First Nat'l Bank v. Citizens Deposit Bank & Trust,* 735 S.W.2d 328, 331 (Ky.Ct.App.1987).

In *Dalton v. First Nat'l Bank,* 712 S.W.2d 954 (Ky.Ct.App.1986), the Kentucky Court of Appeals held that broad, boilerplate future advance clauses in purchase money security agreements for consumer goods are only enforceable when the subsequent transaction involves a similar purchase money loan for consumer goods. *Id.* at 959. In that case, the bank held a purchase money security interest in a trailer. The security agreement included a boilerplate future advance clause stating that the trailer would also secure any other debt then or thereafter owed to the bank. The bank sought to enforce this security for a debt resulting from a check that the Debtor requested be stopped. The bank mistakenly paid the check, and then sought to enforce this payment as a secured debt. The Court opined that "future advance clauses are usually found in commercial 'floating lien' contracts, where the intent of the parties to include future advances may be inferred from the similarity of the future transaction with the underlying transaction or from the course of dealing between the parties." *Id.* at

958. For this reason, the Court stated that if the parties intend to include future advances that are not of the same type or class as the original debt, this intention must be clearly set out in the agreement. *Id.*

Following *Dalton,* this Court found a broad future advance clause invalid in a purchase money security agreement for an automobile loan, where the subsequent debt was for a general unsecured loan. *In re Breckinridge,* 140 B.R. 642, 643 (Bankr.W.D.Ky.1992) We noted that in consumer credit cases the latter transaction must also be in the same class. If the original debt is a purchase money loan, the subsequent debt must also be a purchase money loan for a future advance clause to be enforceable. *Id.* Some courts in other jurisdictions have gone farther, requiring not only that the loans be in the same class, but that the transactions be almost identical. *In re Wollin,* 249 B.R. 555, 559 (Bankr.D.Or.2000) (credit card charges, presumably purchase money, are insufficiently related to a car loan to be covered by future advance clause).[3]

In this case, the original loan was a purchase money transaction for a motorcycle. The subsequent loan was a general signature loan, unsecured except for credit shares and the future advance clause. As in *Breckinridge,* the Court finds that this future advance clause should not be enforced, as the transactions are not of the same class. There is no proof here that the Defendant could have reasonably contemplated, because of the boilerplate language in the security agreement, that the

---

**3.** This exception to the general enforceability of future advance clauses only applies to consumer credit transactions. *See, e.g., In re Polley,* 219 B.R. 205, 207 (Bankr.W.D.Ky. 1998) (future advance clause in mortgage securing residence sufficient to secure subsequent business loans, where the clause specified that the mortgage would secure all future debt, *regardless* of whether it was of the same type of class). *See also In re Wollin,* 249 B.R. 555, 559 (Bankr.D.Or.2000) (future advance or "dragnet" clauses may be more strictly construed in consumer cases, because of the parties' unequal bargaining power).

motorcycle would secure all future debt owed to Plaintiff.

### CONCLUSION

For the above reasons, the Court finds that Defendant caused a willful and malicious injury to Plaintiff by converting the insurance proceeds for his own use. Therefore, $2,684.55, the balance owed to Plaintiff at the time of the bankruptcy filing, is excepted from discharge pursuant to 11 U.S.C. § 523(a)(6). By separate Order, the Court will enter judgment in favor of Plaintiff for $2,684.55 plus interest at the current federal judgment rate of 3.70%