statements are considered defamation *per se.* In addition, the Michigan court also made reference to the fact that Debtors made these statements intentionally inasmuch as Debtors continued to make the statements to third parties even after they became aware of the results of the DNA paternity tests which excluded Wilbur as Debtor Diane Kennedy's father.

Therefore, even if an argument could be made that the bankruptcy court should not have considered both the Michigan as well as the Kentucky state court judgments, as the district court properly concluded, the outcome does not change inasmuch as the Michigan judgment in and of itself precludes litigation of this issue because the statements at issue are defamation *per se* under Michigan law, meaning that the courts presume that the speakers make such statements knowing that substantial harm or injury will result. *See Markowitz*, 190 F.3d at 464 (holding that "unless 'the actor desires to cause consequences of his act, or . . . believes that the consequences are substantially certain to result from it,' he has not committed a 'willful and malicious injury' as defined under § 523(a)(6)"); *Burden*, 613 N.W.2d at 381-82 (finding that statements as to a lack of chastity are defamatory *per se*, meaning that the words are actionable in themselves and that damages are presumed).

## CONCLUSION

For the reasons set forth above, the district court's order is **AFFIRMED**.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2001 FED App. 0156P (6th Cir.)
File Name:  01a0156p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

In re: THOMAS JOSEPH KENNEDY and DIANE MICHELLE KENNEDY,
                    *Debtors.*

_____

THOMAS JOSEPH KENNEDY; DIANE MICHELLE KENNEDY,
                    *Appellants,*

*v.*

PHILLIP B. MUSTAINE; PHYLLIS J. MUSTAINE,
                    *Appellees.*

No. 99-6484

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No.  98-00166—Charles M. Allen, District Judge.

Argued:  January 26, 2001

Decided and Filed:  May 10, 2001

Before:  JONES, BATCHELDER, and CLAY, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Richard Kelly Harris, Louisville, Kentucky, for Appellants. Richard A. Schwartz, KRUGER, SCHWARTZ & MORREAU, Louisville, Kentucky, for Appellees. **ON BRIEF:** Richard Kelly Harris, Louisville, Kentucky, for Appellants. Richard A. Schwartz, KRUGER, SCHWARTZ & MORREAU, Louisville, Kentucky, for Appellees.

_____

**OPINION**

_____

CLAY, Circuit Judge. Debtors-Appellants, Thomas Joseph Kennedy and his wife Diane Michelle Kennedy, appeal from the judgment entered by the district court on September 29, 1999, affirming the order entered by the United States Bankruptcy Court for the Western District of Kentucky, granting summary judgment to Creditors-Appellees, Phillip B. Mustaine and his wife Phyllis J. Mustaine – Plaintiffs in the underlying adversary proceeding and parents of Debtor Diane Kennedy – on Creditors' claim for nondischargeability of their judgment obtained against Debtors in Michigan state court on a defamation suit in the amount of $65,000. We now **AFFIRM** the district court's judgment on the basis that the debt is nondischargeable under *Kawaauhua v. Geiger*, 523 U.S. 57 (1998).

**BACKGROUND**

This case began in Ingham County Circuit Court in Lansing, Michigan. There, on October 15, 1995, Creditors filed suit against Debtors and a third defendant, George Wilbur, alleging fraud and defamation, among other things. The basis of the defamation claim was that Debtors and Wilbur made false and defamatory statements to third parties regarding the paternity of Debtor Diane Kennedy. Specifically, Creditors claimed that Debtors made statements

We need not decide whether the bankruptcy court properly relied upon the Michigan and Kentucky judgments in rendering its decision because Michigan law standing alone provides the basis for preclusion. Under Michigan law, words as to a lack of chastity are defamation *per se* – i.e., injurious by their nature; it therefore was unnecessary for the bankruptcy court to consider the Kentucky judgment in order to find that Debtors were estopped from litigating whether these defamatory statements were intentional and substantially certain to cause harm for purposes of § 523(a)(6). In *Burden v. Elias Brothers Big Boy Restaurants*, 613 N.W.2d 378 (Mich. Ct. App. 2000), the Michigan Court of Appeals recently addressed a claim for defamation and specifically distinguished defamation *per se* from defamation *per quod* as follows:

> The elements of a cause of action for defamation are (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged publication to a third party, (3) fault amounting to at least to negligence on the part of the publisher, (4) either actionability of the statement irrespective of special harm (defamation *per se*) or the existence of special harm caused by the publication (defamation *per quod*).

*Id.* at 381. The court went on to recognize that

> MCL 600.2911(1); MSA 27A.2911(1) is the codification of the common-law principle that words imputing a lack of chastity or the commission of a crime constitute defamation *per se* and are actionable even in the absence of an ability to prove actual or special damages, as evidenced by the statute's indication that such words are "actionable in themselves . . . ."

*Id.* at 382. The court noted that when the words at issue fall under § 600.2911(1), "injury to the reputation of the person is presumed . . . ." Accordingly, as found by the district court, under Michigan law it is presumed that when Debtors made statements as to Creditors' chastity in the case at hand, they were substantially certain that harm would result because such

## B.   Application of the Test

In rendering its decision, the bankruptcy court opined as follows:

In summation, this Court finds that the facts necessary to support a determination of nondischargeability under § 523(a)(6) of the Plaintiffs' defamation claim are clearly established by the prior Kentucky and Michigan judgments. First, the Michigan judgment establishes that the statements at issue were in fact made, while the Kentucky judgment establishes that they were defamatory in character and intentional in nature. Second, the Kentucky judgment establishes that the statements were inherently injurious, giving rise to an inference of an expectation of harm and intent to injure. Lastly, the Michigan judgment expressly established that the statements were made without just cause or excuse.

(J.A. at 18-26.)  In finding that the bankruptcy court did not err in rendering this decision, the district court stated:

Appellants argue that the trial court [bankruptcy court] denied full faith and credit to the Michigan judgment by imputing the more stringent "intentional" standard used in Kentucky when the Michigan court had not found "intent."  Appellants argue that the Bankruptcy Court was only able to impute "intent" by looking at the Kentucky judgment. However, it is not merely Kentucky law, but Michigan law as well, that words imputing lack of chastity are defamatory per se, i.e., injurious by their nature. M.C.L. 600.2911(1). Furthermore, the Michigan judgment found that the Kennedys made their injurious statements even after they knew that DNA tests had conclusively established the falsity of the injurious statements.   Thus, even without reference to the Kentucky judgment, it is apparent that the debt is nondischargeable, consistent with *Kawaauhau*.

(J.A. at 56.)

to the effect that Creditor Phillip Mustaine was not Diane Kennedy's biological father; but rather, George Wilbur was her biological father, despite Debtors' knowledge of the result of the DNA parentage test indicating that the probability of Wilbur being her father was 0.0%. Following a bench trial on January 17, 1997, the Ingham County Court entered judgment in favor of Creditors and against Debtors in the total amount of $65,000.  The court found no cause of action against Wilbur.

Meanwhile, on June 18, 1996, Kentucky Farm Bureau Mutual Insurance Company ("KFB") filed a declaratory judgment action against Debtors in Jefferson County Circuit Court in Kentucky.  Debtors were insured under a homeowner's policy issued by KFB at the time of the defamation suit in Michigan, and KFB filed suit seeking a declaration that the claims arising out of the Michigan lawsuit did not come within the scope of Debtors' insurance coverage.  The Kentucky circuit court granted summary judgment to KFB, finding that because the defamatory statements were inherently injurious, the claims in Michigan were outside Debtors' insurance policy.

As a result of the proceedings in the Michigan and Kentucky state courts, Debtors claim that they were forced into filing Chapter 7 bankruptcy.  Debtors attempted to discharge the Michigan judgment lodged against them as well as other debts.  However, Creditors filed an adversary proceeding, claiming that their judgment obtained against Debtors in Michigan was nondischargeable inasmuch as the debt was the result of "willful and malicious injury by the debtor to another entity or to the property of another entity" under 11 U.S.C. § 523(a)(6).

On October 15, 1997, the bankruptcy court entered a memorandum opinion granting summary judgment to Creditors in the adversary proceeding, finding the debt to Creditors nondischargeable based upon the previous decisions in the Michigan and Kentucky state courts. Specifically, the bankruptcy court opined as follows:

In summation, this Court finds that the facts necessary to support a determination of nondischargeability under § 523(a)(6) of the Plaintiffs' defamation claim are clearly established by the prior Kentucky and Michigan judgments. First, the Michigan judgment establishes that the statements at issue were in fact made, while the Kentucky judgment establishes that they were defamatory in character and intentional in nature. Second, the Kentucky judgment establishes that the statements were inherently injurious, giving rise to an inference of an expectation of harm and intent to injure. Lastly, the Michigan judgment expressly established that the statements were made without just cause or excuse.

Consequently, the Plaintiffs are entitled to judgment as a matter of law pursuant to § 523(a)(6) with regard to the nondischargeability of their defamation claim.

(J.A. at 25-26 (footnote omitted).)  The October 15, 1997, order expressly states that it is not a final order.

Thereafter, on October 29, 1997, Creditors filed a motion to voluntarily dismiss those portions of the complaint upon which the district court did not grant summary judgment, and to make the court's judgment final.  The bankruptcy court entered an order on November 21, 1997, sustaining the Creditors' motion; the order provides as follows:

IT IS FURTHER ORDERED AND ADJUDGED that for the reasons stated in the Court's Opinion and Order of October 15, 1997, the $65,000.00 debt created by the judgment rendered by the Circuit Court for the County of Ingham, State of Michigan, of and concerning the Plaintiffs' defamation claims against the Defendants is hereby declared to be non-dischargeable in the full amount of $65,000.00 pursuant to 11 U.S.C. § 523(a)(6).

This is a final and appealable judgment there being no just reason for delay.

*Kennedy v. Mustaine (In re Kennedy)*, No. 97-30341(2)7; A.P. No. 97-3056 (Bankr. W.D. Ky. Nov. 21, 1997)

(J.A. at 55-56.)

We agree with the district court.  Although *Geiger* had yet to be decided, and the bankruptcy court was laboring under case law which set forth the incorrect standard for nondischargeablity, the bankruptcy court nonetheless captured the essence of *Geiger's* test in its reasoning; namely, that only acts done with the intent to cause injury – and not merely acts done intentionally – rise to the level of willful and malicious injury for purposes of satisfying § 523(a)(6). *See Geiger*, 523 U.S. at 61; *Markowitz*, 190 F.3d at 464 (holding that "unless 'the actor desires to cause consequences of his act, or . . . believes that the consequences are substantially certain to result from it,' he has not committed a 'willful and malicious injury' as defined under § 523(a)(6)").

Indeed, the bankruptcy court stated in prongs one and two of its three prong test that to find Creditors' judgment nondischargeable in this case, the Creditors had to prove that Debtors acted with intent as well as with substantial certainty that harm would result from their actions.[4]  This test is consistent with *Geiger* as well as *Markowitz*[4].  Therefore, it is not the test that the bankruptcy court applied in rendering its decision finding the debt nondischargeable that is at issue here; rather, the bankruptcy court's application of the test and use of Michigan and Kentucky decisions to find the debt nondischargeable under § 523(a)(6), is the pivotal issue.

---

[4] We note that neither Creditors nor Debtors cite to *Markowitz* in their briefs.  Rather, Debtors and Creditors each argue *Geiger's* effect on the status of the law in the Sixth Circuit.  However, these arguments are for naught inasmuch as *Markowitz* clearly set forth the effect of *Geiger* on the law in this circuit.  *See Markowitz v. Campbell (In re Markowitz)*, 190 F.3d at 455, 465 (6th Cir. 1999).

*Geiger*, in rendering its decision that Creditors' judgment against Debtors was nondischargeable under § 536(a)(6). In doing so, the bankruptcy court applied the following test:

> With that definition [of defamation from the Michigan courts] in mind, the creditor seeking the §523(a)(6) nondischargeability determination must demonstrate: (1) the debtor intentionally published a defamatory statement; (2) the debtor knew that the defamatory statement was substantially certain to harm the person about whom the statement concerned; and (3) there was no just cause or excuse for making the statement.

(J.A. at 18.)

The district court found that despite the bankruptcy court's reliance on case law which set forth the incorrect standard for determining whether a debt is nondischargeable under § 523(a)(6), the bankruptcy court nonetheless managed to craft the appropriate test for determining nondischargeability under prevailing Supreme Court precedent. Specifically, the district court opined as follows:

> Appellants argue that the Bankruptcy Court erroneously applied the standards of *Perkins v. Scharffe*, 817 F.2d 392 (6th Cir. 1987), a standard discredited by *Kawaauhau v. Geiger*, 523 U.S. 57 (1998). *Kawaauhau* held that Sec. 523(a)(6) nondischargeablity required a finding that the debtor intended injury rather than only a finding that the debtor intended the act which caused the injury. Although the *Kawaauhau* opinion was not available to the Bankruptcy Court, Judge Roberts' analysis was entirely consistent with the requirements of *Kawaauhau*. The Bankruptcy Court noted that the Kennedys continued to make the statements in question even after receiving clear proof that the statements were false; as noted by the Kentucky court (and as is abundantly clear without the Kentucky judgment) the statements were injurious by their very nature; thus, it is clear that in making the statements, the Kennedys intended injury.

(unpublished order granting Plaintiffs' motion for voluntary dismissal of claims and to make judgment final).[1]

On December 1, 1997, Debtors filed a motion for reconsideration of the court's November 21 order, which the bankruptcy court denied in a memorandum opinion and order entered on January 15, 1998.[2] Debtors thereafter appealed the bankruptcy court's decision to the United States District Court for the Western District of Kentucky. In a memorandum opinion and order dated September 29, 1999, the district court affirmed the bankruptcy court's decision, finding Creditors' judgment against Debtors nondischargeable under *Kawaauhau v. Geiger*, 523 U.S. 57 (1998). Thereafter, the district court issued its corresponding judgment affirming the bankruptcy court's order, and it is from this judgment that Debtors now appeal.[3]

---

[1] Although the parties failed to provide this Court, as well as the district court, with a copy of the bankruptcy court's November 21, 1997, order, we obtained a copy from the United States Bankruptcy Court for the Western District of Kentucky.

[2] Because the motion for reconsideration was filed within ten days of the district court's final order entered on November 21, 1997, Debtors were in compliance with the relevant procedural rules. *See* FED. R. BR. P. 9023 (stating that Rule 59 of the Federal Rules of Civil Procedure apply in bankruptcy proceedings); FED. R. CIV. P. 59(e) (stating that a motion to alter or amend a judgment must be filed no later than ten days after entry of judgment).

[3] We note that the parties failed to provide us with a complete joint appendix. Which is to say, the joint appendix submitted in connection with this case failed to provide us with the orders and opinions needed to review the claims involved. As a result, we obtained the record from the lower courts. However, the parties should be reminded that it is not the Court's duty to search the record for relevant materials and failure to provide the Court with the record it needs can lead to dismissal of the appeal. *See Morales v. Am. Honda Motor, Co., Inc.*, 151 F.3d 500, 505 n.1 (6th Cir. 1998).

## DISCUSSION

When this Court considers an appeal taken from the district court's final order in a bankruptcy case, the Court independently reviews the bankruptcy court's decision. *See Koenig Sporting Goods, Inc. v. Morse Rd. Co. (In re Koenig Sporting Goods, Inc.)*, 203 F.3d 986, 988 (6th Cir. 2000). In doing so, the Court reviews the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*. *See Millers Cove Energy Co., Inc. v. Moore (In re Millers Cove Energy Co., Inc.)*, 62 F.3d 155, 157 (6th Cir. 1995). This Court reviews the grant of a motion for summary judgment *de novo* as a matter of law. *See Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 463 (6th Cir. 1999).

### A.  Test for Determining Dischargeability Under Section 523(a)(6)

Section 523(a) of the Bankruptcy Code provides for an exception to the dischargeability of certain debts. Specifically, § 523(a)(6) provides for purposes of this action as follows:

> (a)  A discharge under Section 727, 1141, 1228(a), 1228(b) of this title does not discharge an individual debtor from any debt –
>
> * * *
>
> (6)  for willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. § 523(a)(6). In *Perkins v. Scharffe*, 817 F.2d 392, 394 (6th Cir. 1987), this Court held that "willful and malicious injury" as used within § 523(a)(6) could be found when an actor intends the act committed regardless of whether he intends the consequences thereof. However, in *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998), the Supreme Court addressed the "pivotal question" of whether "§ 523(a)(6)'s compass cover[s] acts, done intentionally, that cause injury . . . or only acts done with the actual intent to cause injury." In answering this inquiry, the Supreme Court held that only acts done with the intent to cause injury – and

not merely acts done intentionally – rise to the level of willful and malicious injury for purposes of satisfying § 523(a)(6). *See id.*  The Court reasoned as follows:

> The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, i.e., "reckless" or "negligent," to modify "injury." Moreover, as the Eighth Circuit observed, the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the consequences of an act," not simply "the act itself." Restatement (Second) of Torts § 8A, Comment a, p. 15 (1964) (emphasis added).

*Id.*

A little more than a year after the Supreme Court's decision in *Geiger*, this Court had occasion to revisit the meaning of "willful and malicious injury" in light of the Supreme Court's pronouncement, and held "that the *Perkins* standard for 'willful and malicious injury' was effectively overruled by the Supreme Court in *Geiger* and we now expressly overrule that standard." *See Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 465 (6th Cir. 1999). The Court articulated this circuit's new standard in light of *Geiger* as follows: "we now hold that unless 'the actor desires to cause consequences of his act, or . . . believes that the consequences are substantially certain to result from it,' he has not committed a 'willful and malicious injury' as defined under § 523(a)(6)." *Id.* at 464 (citation omitted).

In the matter at hand, the bankruptcy court cited and relied upon *Perkins*, as well as *Wheeler v. Laudani*, 783 F.2d 610 (6th Cir. 1986), both of which have since been overruled by