**In re Phillip A. PRICE, Debtor.**

**Eddie Maxwell, Plaintiff,**

v.

**Phillip A. Price, Defendant.**

**Bankruptcy No. 98–44537M.**
**Adversary No. 99–4190.**

United States Bankruptcy Court,
E.D. Arkansas,
Little Rock Division.

June 15, 2001.

Brad Cazort, Clinton, AR, for Plaintiff.

Kathy Cruz, Hot Springs, AR, for Defendant.

## MEMORANDUM OPINION

JAMES G. MIXON, Chief Judge.

This matter comes before the Court upon the complaint of Eddie Maxwell to determine the dischargeability of a debt owed to him by Phillip A. Price, the Debtor in this chapter 7 case. Maxwell alleges that the debt is nondischargeable because, pursuant to 11 U.S.C. § 523(a)(6), the debt resulted from a willful and malicious injury inflicted upon Maxwell by the Debtor. After a hearing on December 18, 2000, the case was taken under advisement.

The Court has jurisdiction under 28 U.S.C. § 1334 and § 157. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I), and the Court may enter a final judgment in the case. The following will constitute the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

## FACTS

The Debtor filed for bankruptcy relief under the provisions of chapter 13 of title eleven of the United States Code on September 13, 1998. The Debtor subsequently converted the case to chapter 7 on December 14, 1999, and on the same day, Maxwell filed his complaint to determine dischargeability.

The debt purported to be nondischargeable arose as the result of a gunshot injury inflicted upon Maxwell by the Debtor on

November 5, 1998, while Maxwell was present on the premises of the Debtor. On that date, Maxwell and the Debtor's estranged wife, identified in the record only as "Danielle," drove in Maxwell's father's truck to the Debtor's residence at 5:30 or 6:00 p.m. Their purpose was to obtain a baby bed and baby clothes to sell in a garage sale. The items were stored in an outbuilding adjacent to the home. Maxwell and Danielle were living together at the time of the incident.

When the couple arrived at the residence, Danielle alighted from the truck and went to the door of the home. Laurie Garrett, who was living at the residence at the time, answered the door and informed Danielle that the Debtor was in another room of the home. Danielle and Maxwell proceeded to drive the truck to the shed and haul items to the truck.

Moments later, the Debtor came outside barefooted and toting a gun. As he approached the truck, the Debtor fired into the air without speaking to either Maxwell or Danielle. Maxwell informed the Debtor that he and Danielle intended to obtain items for a garage sale. Maxwell was holding a part to a baby bed, which he used to push the gun away from his direction, and continued to load the items on the truck.

At that point, the Debtor began to argue with Danielle as the two stood near the truck, and shortly thereafter, the Debtor shot the back right tire of the truck. The Debtor and Danielle continued arguing until the Debtor went back into the house to put on his shoes. At that point, Maxwell backed the truck up to leave but Danielle protested that she wanted "to finish this."

The Debtor returned to the doorway of the home, with Maxwell still in the truck and Danielle standing outside in the front yard. Maxwell exited the truck as the Debtor approached the truck with the fire-

arm. According to the Debtor, Maxwell then said "We're down here to finish this. Let's just take it to the street." Maxwell denied making this statement and testified that the Debtor pointed the gun at the truck and said, "I wonder what would happen if I shot this truck." The Debtor denies making this statement.

At this point the accounts of the ensuing incident by Maxwell and the Debtor vary markedly. Maxwell testified that he eased his hand up to lower the gun and guide the Debtor away from the truck. The Debtor turned on Maxwell and the two men circled each other. Maxwell stated that "Then we struggled and went in a little circle, and bang. And I fell to the ground and said, 'You shot me.'" (Tr. at 20.) Maxwell testified that the Debtor retorted, "You're damned right I shot you." (Tr. at 9.)

The Debtor's version of the incident was that when he returned to his house for his shoes, Maxwell and Danielle began throwing rocks at his house and car. When the Debtor went back outside to request the two to leave, Maxwell grabbed the Debtor's broken left arm, which was in a cast, and twisted it, sending the Debtor to the ground in pain and causing the Debtor to unintentionally pull the trigger of the firearm, shooting Maxwell in the leg. Maxwell denies throwing rocks and seizing the Debtor's broken arm. Maxwell testified that the Debtor's arm was not in a cast and sling at the time of the incident.

The Debtor stated that he was forced to brandish the firearm because his arm was in a sling and he had no means of defending himself, that his estranged wife was violating a restraining order issued by the court by coming on the property, and that the Debtor had no telephone to call for police protection. He further stated that he was unable to drive away from his

home to seek police protection because Maxwell's truck blocked his exit.

Laurie Garrett, who later married the Debtor, was present throughout the incident. She corroborated that Maxwell and Danielle threw rocks and that Maxwell grabbed the Debtor's broken arm and caused the gun to discharge accidently.

After the shooting, Maxwell was rushed to the emergency room, where he incurred medical bills as a result of the gunshot injury. Subsequently, the Debtor pled guilty to a charge of third degree battery.[1]

## DISCUSSION

■ The Bankruptcy Code provides that certain debts are excepted from a chapter 7 discharge, including a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6)(1994). In order to prevail, Maxwell must prove, by a preponderance of the evidence, that the debt resulted from a willful and malicious injury by the Debtor. *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Fischer v. Scarborough (In re Scarborough)*, 171 F.3d 638, 641 (8th Cir.1999).

■ Federal law controls the issue of whether the debt arose from a willful and malicious injury inflicted by the Debtor. *Broussard v. Fields (In re Fields)*, 203 B.R. 401, 410 (Bankr.M.D.La.1996); *Sielschott v. Reimer (In re Reimer)*, 182 B.R. 816, 817 (Bankr.E.D.Mo.1995); *United States v. Walters (In re Walters)*, 176 B.R. 835, 878 (Bankr.N.D.Ind.1994).

■ The United States Supreme Court has held that Section 523(a)(6) of the Bankruptcy Code is based on the common law concept of intentional tort. *Kawaauhau v. Geiger*, 523 U.S. 57, 60, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998) (quoting *In re Geiger*, 113 F.3d 848 (8th Cir.1997)). The type of conduct that justifies denial of discharge requires the same type of intentional act that would give rise to liability for an intentional tort; therefore, reckless or negligent behavior does not rise to the level of a willful and malicious act. *Siemer v. Nangle (In re Nangle)*, 257 B.R. 276, 282 (8th Cir. BAP 2001); *Mills v. Ellerbee (In re Ellerbee)*, 177 B.R. 731, 739 (Bankr. N.D.Ga.1995), *aff'd*, 78 F.3d 600 (11th Cir. 1996); *Walters v. Betts (In re Betts)*, 174 B.R. 636, 642 (Bankr.N.D.Ga.1994). Furthermore, injuries resulting from an accident are not considered willful and malicious in nature. *Hartwood Aviation, Inc. v. Hamilton (In re Hamilton)*, 147 B.R. 779, 782 (Bankr.D.Colo.1992) (citing *In re Posta*, 866 F.2d 364, 367 (10th Cir.1989)), *aff'd*, 46 F.3d 1151 (10th Cir.1994).

■ The statute requires proof of two distinct elements: Willfulness and maliciousness. *In re Nangle*, 257 B.R. at 282 (citing *In re Scarborough*, 171 F.3d at 641; *Barclays American/Bus. Credit, Inc. v. Long (In re Long)*, 774 F.2d 875 (8th Cir.1985); *Allstate Ins. v. Dziuk (In re Dziuk )*, 218 B.R. 485, 487–88 (Bankr. D.Minn.1998)).

■ The word "willful" modifies "injury," indicating that the statute requires "a deliberate or intentional injury." *Geiger*, 523 U.S. at 61, 118 S.Ct. 974, *In re Long*,

---

1. The statute under which the Debtor entered his guilty plea provides:
   (a) A person commits battery in the third degree if:
   (1) With the purpose of causing physical injury to another person, he causes physical injury to any person; or

(2) He recklessly causes physical injury to another person; or
(3) He negligently causes physical injury to another person by means of a deadly weapon.... Ark.Code Ann. § 5–13–203 (Michie1997).

**12**

774 F.2d at 881. To prevail under this exception, the creditor must show that the debtor intended the injury or that the injury was substantially certain to result from the act. *In re Nangle*, 257 B.R. at 282 (quoting *In re Geiger*, 113 F.3d at 852).

██ The creditor must also show that the Debtor's act was malicious, that is, that it was targeted at the creditor with intent to harm or with substantial certainty that the harm will occur. *Hobson Mould Works v. Madsen (In re Madsen)*, 195 F.3d 988, 989 (8th Cir.1999) (quoting *In re Long*, 774 F.2d at 881). To show malice, circumstantial evidence of the debtor's state of mind can be used. *In re Nangle*, 257 B.R. at 283 (citing *Johnson v. Miera (In re Miera)*, 926 F.2d 741, 744 (8th Cir. 1991)).

██ Examining the first prong of the statute, the Court finds that Maxwell did not prevail by a preponderance of the evidence on the issue of whether the Debtor's act resulting in the injury was willful. An examination of the statute under which the Debtor entered a guilty plea to third degree battery reveals that the Debtor could have been admitting to either intentional, reckless or negligent conduct that caused the physical injury. Therefore, the Debtor's guilty plea is of no consequence to this determination because reckless or negligent conduct does not rise to the level of intent necessary to prove willfulness.

As noted, there are two varying accounts of the incident. If the Court focuses only on the moments immediately before and after the shooting, it seems obvious that Maxwell's injury could have resulted from either sequence of events related through testimony. Both parties agree that there was a struggle over the firearm, but Maxwell testified that the Debtor made a statement after the shooting that indicated he meant to injure Maxwell ("You're damned right I shot you"). The Debtor denies making the statement, testifying that Maxwell grabbed his broken arm and in the confusion of the struggle, the gun discharged accidently.

There is not enough undisputed circumstantial evidence of the Debtor's intent to shoot Maxwell that the Court can draw such an inference. While it is true that the Debtor brandished a loaded gun, fired shots in the air, and actually fired at the truck's tire, these facts do not necessarily lead to the conclusion that the Debtor meant to shoot Maxwell. The Court could as easily find that brandishing the gun and firing in the air and at the truck implies the Debtor only meant to frighten Maxwell so he would leave the premises.

Unquestionably, this was a volatile situation in which two estranged spouses seemed determined to confront one another. The Debtor's conduct of brandishing a loaded firearm was decidedly reckless and only served to heighten the possibility of injury. However, brandishing a weapon is not the type of conduct that is certain or substantially certain to cause the injury Maxwell suffered. Moreover, Maxwell was apparently assisting the estranged spouse in violating a restraining order, had entered the Debtor's property without permission, and did not vacate the premises when it was obvious an altercation would ensue. Neither party is blameless.

This is a case of one party's word against that of the other. Without more evidence corroborating Maxwell's version of the incident, it is impossible for the Court to conclude that Maxwell has proved, by a preponderance of the evidence, that the Debtor's conduct resulted in a willful injury. Since both willfulness and malice must be proved, it is unnecessary to examine whether the Debtor's act was malicious.

The debt owed to Maxwell resulting from a gunshot wound inflicted by the Debtor is determined to be dischargeable.

IT IS SO ORDERED.