In re Gregory G. JONES, Debtor.

J & A Brelage, Inc., Plaintiff,

v.

Gregory G. Jones, Defendant.

No. 00–3302.

United States Bankruptcy Court, N.D. Ohio.

Sept. 25, 2001.

James F. Hearn, Wapakoneta, OH, for plaintiff.

John F. Moul, Saint Marys, OH, for defendant.

*MEMORANDUM OPINION
AND DECISION*

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after a Trial on the Plaintiff's Complaint to Determine the Dischargeability of a Debt. At the Trial, the Parties were afforded the opportunity to present evidence and make any arguments that they wished the Court to consider in reaching its decision. This Court has now had the opportunity to review the arguments of counsel, the evidence presented at Trial, as well as the entire record in the case. Based upon that review, and for the following reasons, the Court finds that the obligation at issue herein is, for purposes of bankruptcy law, a nondischargeable debt.

*FACTS*

The Plaintiff/Creditor, J & A Brelage, Inc. is a corporation created by John Brelage and his wife for the purpose of financing small businesses in the agricultural industry. As a part of its business operations, the Plaintiff/Creditor (hereinafter referred to as the "Plaintiff") on various occasions undertook to finance the Defendant/Debtor who for many years operated a dairy farm in northwest Ohio. In return for this financing, which in all totaled One Hundred Twenty-three Thousand Two Hundred Thirty-three and 24/100 dollars ($123,233.24), the Defendant/Debtor (hereinafter referred to as the "Debtor") agreed to pay the Plaintiff Three Thousand Eight Hundred Thirty-three and 90/100 dollars ($3,833.90) per month for a period of One Hundred Sixteen (116) months. As collateral for this transaction, the Debtor granted, through three separate instruments, the Plaintiff a security interest in all his livestock (specifically cattle) and equipment whether currently owned or thereafter acquired; the specific language of the Parties' agreement which created this interest provided as follows:

Debtor also grants to Secured Party a present security interest in all other livestock owned including all increases thereto by birth, replacements, substitutions and additions and all machinery equipment owned or hereafter acquired.

(Plaintiff's Exhibit 3). In addition to the above stated security, the Debtor, as consideration for the Plaintiff's financing, granted the Plaintiff a third mortgage on his farm.

Sometime after obtaining his financing from the Plaintiff, the Debtor, on account of nonpayment, defaulted under the terms of the Parties' agreement. During the course of this default, the facts of this case show that Debtor through various means, which mainly included the liquidation of a significant portion of the Debtor's assets, was able to pay to the Plaintiff all but Eighteen Thousand Seven Hundred Ten and 08/100 dollars ($18,710.08) of the amount he had borrowed. The evidence presented in this case, however, also shows that at this time the Debtor continued to retain some of the Plaintiff's collateral, and that sometime thereafter, the Debtor sold this collateral without providing to the Plaintiff the proceeds therefrom. In this regard, it is undisputed that the Debtor received Ten Thousand Nine Hundred Three dollars ($10,903.00) for the sale of certain farm machinery against which the Plaintiff maintained a first priority security interest. In addition, the evidence put forth in this case also shows that the Defendant sold other farm equipment in which the Plaintiff maintained a subordinated security interest; the selling price of this collateral was approximately Twelve Thousand dollars ($12,000.00) which represented the outstanding amounts owed on this particular farm equipment. The Plaintiff also contends that the Debtor, in

violation of the Parties' security agreement, disposed of ten (10) heads of cattle without paying the proceeds therefrom to the Plaintiff. With regards to this latter assertion, however, it is the Debtor's position that these ten (10) head of cattle had died.

On February 2, 2000, the Plaintiff obtained, in state court, a default judgment on a complaint for breach of contract; the amount of damages in this judgment was set at Eighteen Thousand Seven Hundred Ten dollars ($18,710.00) plus interest at 10% per annum. That same year, the Debtor petitioned this Court for relief under Chapter 7 of the United States Bankruptcy Code. Thereafter, the Plaintiff commenced a timely adversary complaint, pursuant to Bankruptcy Rule 7001, to have its state court judgment determined to be a nondischargeable debt. The legal grounds for the Plaintiff's complaint to determine dischargeability rested entirely upon the exception to discharge contained in 11 U.S.C. § 523(a)(6) which excludes from the scope of a bankruptcy discharge those debts incurred as a result of the debtor's willful and malicious conduct.

In opposition to the Plaintiff's complaint, the Debtor argues that he was not aware that the Plaintiff maintained a first and best security interest in much of the farm equipment he had sold. In this regard, the Debtor testified to the fact that, at the time of the sale, he was under the understanding, albeit false, that his father had a first and best security interest in the farm equipment, which according to the Debtor had, unbeknownst to him, lapsed. Also, in opposition to the Plaintiff's complaint, the Debtor raises what is, in essence, an equitable argument; specifically the Debtor stated to the Court that:

Defendant Jones did sell some property which was secured by the Plaintiff; however, it is Defendant Jones' position that

any such sale or conversion was technical in nature and the Plaintiff did not suffer financial harm because of the extraordinary interest rate that Plaintiff had charged Defendant in prior dealings, and Plaintiff's gross return from this investment was more than commercially reasonable.

(Debtor's Pretrial Brief, at pg. 1).

## LAW

### Section 523. Exceptions to discharge

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

## DISCUSSION

Under 28 U.S.C. § 157(b)(2)(I), a determination as to the dischargeability of a particular debt is a core proceeding. Thus, this matter is a core proceeding.

The Bankruptcy Code excepts from discharge those debts which arise from a "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The Plaintiff's argument to have its claim against the Debtor held nondischargeable under this section centers around the Debtor's alleged conversion of its collateral. (Plaintiff's Pretrial Statement, at pg. 1). In addressing this argument as it relates to the Plaintiff's cause of action under § 523(a)(6), the Court begins by noting that the Debtor's failure to satisfactorily account for the Plaintiff's collateral almost certainly amounts to an act of conversion under Ohio law. However, dischargeability proceedings brought under § 523(a)(6) are determined by reference to federal

law,[1] and in this respect, while the act of conversion may give rise to a nondischargeable debt under § 523(a)(6),[2] the mere act of conversion does not, for purposes of federal law, create a nondischargeable debt per se; as stated by the Supreme Court of the United States *in Kawaauhau v. Geiger:* "not every tort judgment for conversion is exempt from discharge. Negligent or reckless acts ... do not suffice to establish that a resulting injury is willful and malicious." 523 U.S. 57, 63–64, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). Accordingly, when a secured creditor seeks to have a debt held nondischargeable on the basis that the debtor converted its collateral, it is still incumbent upon the creditor to establish that the requirements of § 523(a)(6) are met.

 For purposes of the § 523(a)(6) exception to discharge, it is clear that, by Congress inserting the conjunctive word "and" in between the words "willful" and "malicious," a debt will only be excepted from discharge if both these standards, as defined by federal law, are met. *Markowitz v. Campbell (In re Markowitz),* 190 F.3d 455, 463 (6th Cir.1999) (holding the absence of either the willful or malicious requirement from § 523(a)(6) creates a dischargeable debt); *Hinze v. Robinson (In re Robinson),* 242 B.R. 380, 387 fn. 5 (Bankr.N.D.Ohio 1999). In *Kawaauhau v. Geiger,* the Supreme Court of the United States specifically addressed the "willful" requirement of § 523(a)(6), stating:

> The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead 'willful acts that cause injury.' Or, Congress might have selected an additional word or words, i.e., 'reckless' or 'negligent,' to modify 'injury.' Moreover, as the Eighth Circuit observed, the (a)(6) formulation triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend 'the consequences of an act,' not simply 'the act itself.'

523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998) (internal citations omitted). Later, in *Markowitz v. Campbell (In re Markowitz),* the Sixth Circuit Court of Appeals, in addressing this holding, further refined it by articulating the following standard:

> we now hold that unless 'the actor desires to cause consequences of his act, or ... believes that the consequences are substantially certain to result from it,' he has not committed a 'willful and malicious injury' as defined under § 523(a)(6).

190 F.3d 455, 464 (6th Cir.1999); *see also Kennedy v. Mustaine (In re Kennedy),* 249 F.3d 576, 580 (6th Cir.2001). Thus, in conformance with these decisions, this Court, as it has done in the past, will only find that a debtor has acted "willfully" for purpose of § 523(a)(6) when that person acts with the intent to cause injury, or when that person is substantially certain that an injury will occur. *Mutual Casual-*

---

1. *See, e.g., Call Federal Credit Union v. Sweeney (In re Sweeney),* 264 B.R. 866, 870 (Bankr. W.D.Ky.2001); *Hinze v. Robinson (In re Robinson),* 242 B.R. 380, 388 (Bankr.N.D.Ohio 1999); *Maxwell v. Price (In re Price),* 264 B.R. 8, 11 (Bankr.E.D.Ark.2001).

2. *McIntyre v. Kavanaugh,* 242 U.S. 138, 37 S.Ct. 38, 61 L.Ed. 205 (1916) *and Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934).

*ty Co. v. Chapman (In re Chapman)*, 228 B.R. 899, 908 (Bankr.N.D.Ohio 1998).

■■■ In any action brought under § 523(a)(6), federal law places the burden of proof upon the creditor to establish that the debtor acted with the intent to cause injury or was substantially certain the injury would occur, with the quantum of proof therefor being the preponderance of the evidence standard. *Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). This standard may be met by the creditor introducing direct evidence of the debtor's state of mind; that is, evidence from someone with first-hand knowledge of the matter. More often than not, however, direct evidence of a debtor's state of mind will not be available given the simple fact that a debtor is unlikely to ever admit that he or she intended to cause an injury, or that he or she was substantially certain that an injury would result. As a result, a party, who seeks to demonstrate that a debtor acted "willfully" for purposes of § 523(a)(6), must normally establish this requirement indirectly through the utilization of circumstantial evidence. *Mitsubishi Motors Credit of Am., Inc. v. Longley (In re Longley)*, 235 B.R. 651, 657 (10th Cir. BAP 1999); *In re Sweeney*, 264 B.R. 866, 872 (Bankr. W.D.Ky.2001). For purposes of this standard and in the context where a debtor has converted a creditor's collateral, it has been held—and this Court agrees—that the "willful" requirement of § 523(a)(6) may be indirectly established by the creditor demonstrating the existence of two facts: (1) the debtor knew of the creditor's lien rights; and (2) the debtor knew that his conduct would cause injury to those rights. *In re Longley*, 235 B.R. at 657; *In re Sweeney*, 264 B.R. at 872. In this case, since there exists no dispute that the Debtor knew of the Plaintiff's lien rights, the sole issue is whether the Debtor was aware that by disposing of his farm equip-

ment he was causing injury the Plaintiff's lien rights. After giving this matter careful consideration, the Court, for the reasons that will now be explained, answers this question in the affirmative.

Under Ohio law, a security interest affords a creditor a legal interest in the subject property. O.R.C. § 1301.01(KK)(1). More importantly, however, for purposes of this case, a debtor is also under a duty to take reasonable precautions to protect a creditor's interest in the property subject to the security interest. OHIO JUR.3D., Secured Transactions § 125 (Risk of Loss in Nonpurchase Money Security Interest is with the debtor). It therefore follows that, for purposes of determining whether a debtor knew his actions would injure the creditor's lien rights, a rebuttable presumption will arise when the debtor, despite having knowledge as to the implications of the security agreement, took no action to protect the creditor's interest therein. In this regard, two considerations present in this case show that this presumption is applicable. First, the security agreement entered into between the Debtor and the Plaintiff clearly spelled out that the Plaintiff's security interest extended to all equipment and machinery owned by the Debtor regardless of when it was acquired. Second, the facts presented in this case show that the debtor, having been in the farming business for a number of years, was undoubtably familiar with the implications of a security agreement. In fact, this latter point is clearly exemplified by the fact that the Defendant, upon experiencing financial difficulties, voluntarily applied a significant portion of the Plaintiff's collateral to his outstanding debt.

In response to these considerations, the Debtor offered, as a justification for his actions, the assertion that he thought that his father maintained a first and best secu-

rity interest in the Plaintiff's collateral. The Court, however, does not find such a reason credible as even if this statement were true—and the Court is not actually convinced of this—such a situation would only affect the Plaintiff's relative priority in the collateral, but would not affect the Plaintiff's actual interest in the collateral. As such, the Court cannot find that such a consideration mitigates or otherwise affects the Debtor's intent to cause injury to the Plaintiff's collateral. In this regard, the Court observes that Ohio law specifically provides that in the absence of the secured party's consent, a security interest in an item of collateral generally continues in the collateral notwithstanding the fact that the collateral is subsequently sold, exchanged or otherwise disposed of O.R.C. § 1309.25(B). In addition, the Court must reject the Debtor's equitable argument concerning whether the contract between the Parties was commercially reasonable because, again, such an argument, whether valid or not, has no bearing on the Plaintiff's secured interest in the farm equipment.

■ Thus, for the foregoing reasons, it is the conclusion of this Court that the Debtor had to be aware that his actions vis-a-vis the farm equipment would potentially injure the Plaintiff's lien rights therein. Accordingly, the Court hereby holds that, for purposes of § 523(a)(6), the Debtor acted "willfully" with respect to the farm equipment the Plaintiff held as collateral. Additionally, for these same reasons, the Court finds that the Debtor acted maliciously with respect to the Plaintiff's collateral, with a malicious injury being defined under § 523(a)(6) as occurring when a person acts in conscious disregard of their duties or without just cause or excuse. *Gonzalez v. Moffitt (In re Moffitt)*, 254 B.R. 389, 396 (Bankr.N.D.Ohio 2000). Judgment, therefore, will be entered in the Plaintiff' favor on the Plaintiff's Complaint to determine dischargeability under § 523(a)(6). As for the amount of damages to be assessed against the Debtor, the Court does not find that sufficient evidence has been introduced in the case to alter the sum of damages which was previously awarded to the Plaintiff in the underlying state court action. As a result, the Plaintiff's entire state court judgment will be found to be a nondischargeable obligation.

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

*ORDERED* that the debt of the Debtor/Defendant, Gregory G. Jones, to the Plaintiff, J & A Brelage, Inc., be, and is hereby, determined to be a NONDISCHARGEABLE DEBT.